UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - -:
UNITED STATES OF AMERICA,            :    16 Civ. 4291 (LAK) (JCF)
                                     :
              Plaintiff,             :       REPORT AND
                                     :    RECOMMENDATION
      - against -                    :
                                     :
NEW YORK CITY DEPARTMENT OF          :
EDUCATION,                           :
                                     :
              Defendant.             :
- - - - - - - - - - - - - - - - - - -:
LISA-ERIKA JAMES and HEATHER         :    16 Civ. 4844 (LAK) (JCF)
HIGHTOWER,                           :
                                     :
              Plaintiffs,            :
                                     :
      - against -                    :
                                     :
NEW YORK CITY DEPARTMENT OF          :
EDUCATION, MINERVA ZANCA,            :
individually, and JUAN MENDEZ,       :
individually,                        :
                                     :
              Defendants.            :
- - - - - - - - - - - - - - - - - - -:

USDS SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 1/31/17

TO THE HONORABLE LEWIS A. KAPLAN, U.S.D.J.:

The plaintiffs, Lisa-Erika James and Heather Hightower, bring
this action against the New York City Department of Education (the
"DOE"), Juan Mendez, and Minerva Zanca alleging discrimination and
retaliation in violation of 42 U.S.C. § 1981, Title VII of the
Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq. ("Title VII"),
the New York State Human Rights Law, N.Y. Exec. Law § 296 et seq.
(the "NYSHRL"), and the New York City Human Rights Law, N.Y. Admin.
Code § 8-107 et seq. (the "NYCHRL").  The defendants move to
dismiss the Amended Complaint in part.  For the reasons set forth

1

the below, I recommend that their motion be granted in part and denied in part.

<u>Background</u>

This case involves allegations that Minerva Zanca, the principal of Pan American International High School ("PAIHS"), discriminated against African-American teachers at the school. (Amended Complaint ("Amend. Compl."), ¶¶ 13, 24). Ms. Zanca was hired as the principal of PAIHS in August 2012. (Amend. Compl., ¶ 22). Ms. James and Ms. Hightower were two of three African-American teachers employed at PAIHS during the 2012-2013 school year. (Amend. Compl., ¶¶ 9, 19, 23, 47-48). Mr. Mendez was the Superintendent of High Schools for District 28, which gave him supervisory authority over Ms. James and Ms. Hightower. (Amend. Compl., ¶ 15-16).

Ms. Hightower was hired as a science teacher at PAIHS in the fall of 2010. (Amend. Compl., ¶ 19). She consistently received satisfactory performance ratings before Ms. Zanca was hired. (Amend. Compl., ¶ 21). During the 2012-2013 school year, Ms. Zanca and Anthony Riccardo, the assistant principal at PAIHS, gave Ms. Hightower several unsatisfactory lesson ratings. (Amend. Compl., ¶¶ 28, 40). Before observing their lessons, Ms. Zanca told Mr. Riccardo that she planned to give Ms. Hightower and John Flanagan, another African-American teacher at PAIHS, unsatisfactory ratings. (Amend. Compl., ¶ 29). Ms. Hightower and Mr. Flanagan were both

2

untenured, meaning an unsatisfactory rating for the academic year could justify terminating their employment with the DOE. (Amend. Compl., ¶¶ 23, 27). Ms. Zanca told Mr. Riccardo that four unsatisfactory lesson ratings was "the magic number" to have a teacher fired. (Amend. Compl., ¶ 29).

In a November 13, 2012, meeting with Ms. Zanca and Mr. Riccardo, Ms. Hightower was told that she would be required to meet with Mr. Riccardo to improve her teaching skills. (Amend. Compl., ¶ 35). After Ms. Hightower left the meeting, Ms. Zanca told Mr. Riccardo, "You better not make her a better teacher." (Amend. Compl., ¶ 35). Ms. Zanca also made racially insensitive comments about Ms. Hightower and Mr. Flanagan. She told Mr. Riccardo that Ms. Hightower "looked like a gorilla in a sweater," and asked, "What is with [her] fucking nappy hair?" (Amend. Compl., ¶¶ 36, 38). She also made multiple comments about the appearance of Mr. Flanagan's lips. (Amend. Compl., ¶¶ 37, 39).

Ms. Zanca and Mr. Riccardo continued to issue Ms. Hightower unsatisfactory lesson ratings through the winter and spring of 2013. (Amend. Compl., ¶ 40). In April 2013, Mr. Riccardo gave Ms. Hightower a satisfactory lesson rating, after which Ms. Zanca accused Mr. Riccardo of "sabotaging her plan" and instructed school safety officers to remove him from the building. (Amend. Compl., ¶ 41). In June 2013, Ms. Zanca gave Ms. Hightower and Mr. Flanagan unsatisfactory ratings for the 2012-2013 academic year. (Amend.

3

Compl., ¶ 42).  They were the only two teachers out of twenty-seven at PAIHS to receive an unsatisfactory rating for the year. (Amend. Compl., ¶¶ 23, 42).  In July 2013, Ms. Hightower and Mr. Flanagan were discontinued from their employment with the DOE because of those ratings.  (Amend. Compl., ¶ 43).

Ms. James began working as a teacher for the DOE in the fall of 2003.  (Amend. Compl., ¶ 44).  She was hired by PAIHS in August 2011 to establish a theater program at the school.  (Amend. Compl., ¶ 47).  In addition to teaching daily theater classes, her job duties included producing and directing two plays and four in-house class presentations each year.  (Amend. Compl., ¶ 48). Unlike Ms. Hightower and Mr. Flanagan, Ms. James had tenure, meaning she could not be terminated for unsatisfactory ratings alone.  (Amend. Compl., ¶ 51).  Rather than giving her unsatisfactory ratings, Ms. Zanca sought to undermine her theater program.

On February 12, 2013, PAIHS students were scheduled to perform their first theater production of the academic year at Bard College.  (Amend. Compl., ¶ 53).  Hours before they were scheduled to go on stage, Ms. Zanca's secretary informed Ms. James that the school would not pay for "vital costs" associated with the production, including compensation for the light board operator, sound board operator, and photographer.  (Amend. Compl., ¶ 53). Ms. Zanca refused to speak with Ms. James directly about the

refusal to pay, and Ms. James decided to pay the costs herself to avoid canceling the show.  (Amend. Compl., ¶ 53).  After the February production, Ms. Zanca informed Ms. James that the school could not pay the overtime hours needed to hold after-school rehearsals for the spring production even though the funds were already allocated.  (Amend. Compl., ¶ 57).  The spring production was canceled as a result.  (Amend. Compl., ¶ 57).  In March 2013, a PAIHS parent informed Ms. James that Ms. Zanca had disparaged Ms. James' theater program at a School Leadership Team meeting and accused her of spending funds without authorization (Ms. Zanca had in fact authorized the spending).  (Amend. Compl., ¶ 56).

In June 2013, Ms. Hightower, Ms. James, and Mr. Flanagan filed complaints against Ms. Zanca with the DOE's Office of Equal Opportunity ("OEO").  (Amend. Compl., ¶ 62).  In retaliation for the complaints, Ms. Zanca instructed school safety officers to bar them from school premises during the summer of 2013, even though Ms. James was still employed by PAIHS.  (Amend. Compl., ¶ 63).

Ms. James was advised by her physician to take a two-week leave of absence because of stress caused by Ms. Zanca's conduct.  (Amend. Compl., ¶ 71).  After her leave of absence, she sought a transfer to a different school within the DOE.  (Amend. Compl., ¶ 74).  In the fall of 2013, she found a position at the Manhattan Theatre Lab High School ("Manhattan Lab"), a school that was scheduled to close in 2015.  (Amend. Compl., ¶ 76).  This led her

to be designated as an "excess employee" when Manhattan Lab was closed. (Amend. Compl., ¶ 76). Ms. James no longer works for the DOE but "may still be" on their payroll. (Amend. Compl., ¶ 77). No African-American teachers remained at PAIHS after Ms. James' transfer and Ms. Hightower's and Mr. Flanagan's termination. (Amend. Compl., ¶ 68).

The plaintiffs filed charges with the United States Equal Opportunity Employment (the "EEOC") in or around August 2013. (Amend. Compl., ¶ 5). The EEOC found probable cause to believe that the DOE engaged in discriminatory conduct and referred the charges to the United States Department of Justice (the "DOJ"). (Amend. Compl., ¶ 6). On June 9, 2016, the DOJ filed a lawsuit against the DOE in connection with the discriminatory conduct alleged by the plaintiffs. (Amend. Compl., ¶ 7). The plaintiffs filed this action on June 22, 2016, and on October 13, 2016, it was consolidated with the DOJ's lawsuit along with separate lawsuits filed by Mr. Flanagan and Mr. Riccardo. (Order dated Oct. 13, 2016, at 2).

On September 9, 2016, the defendants moved to dismiss the Complaint in part, and on September 26, 2016, the plaintiffs filed an Amended Complaint. On October 24, 2016, the defendants answered and moved to dismiss the Amended Complaint in part on the following

grounds:[1] (1) the plaintiffs' claim against the DOE under 42 U.S.C. § 1981 fails to state a claim for municipal liability; (2) The plaintiffs' Title VII claims are barred by the statute of limitations to the extent that they are based on conduct that occurred more than 300 days before the plaintiffs filed their EEOC charges; (3) the plaintiffs' NYSHRL and NYCHRL claims against the DOE and Mr. Mendez are barred by their failure to file a notice of claim and by a one-year statute of limitations; (4) the plaintiffs' NYSHRL and NYCHRL claims against Ms. Zanca that are based on conduct that occurred before June 22, 2013, are barred by a three-year statute of limitations; and (5) Ms. James' constructive discharge claim should be dismissed because she remains employed with the DOE.  (Defendants' Memorandum of Law in Support of Motion

---

[1] The Amended Complaint appears to be responsive to two of the defendants' claims in their September 9 motion to dismiss the original Complaint.  First, the defendants had moved to dismiss the plaintiffs' Title VII claims against the DOE and Mr. Mendez on the ground that Title VII claims may not be brought against individuals.  (Defendants' Memorandum of Law in Support of Motion to Dismiss the Complaint, in Part dated Sept. 9, 2016 ("Def. 9/9/16 Memo."), at 10).  The Amended Complaint withdrew those claims.  (Amend. Compl., ¶¶ 90-95; Complaint, ¶¶ 84-89).  Second, the defendants had moved to dismiss the plaintiffs' Title VII claims because they had failed to obtain right-to-sue letters.  (Def. 9/9/16 Memo. at 10).  The Amended Complaint explained that the plaintiffs could not obtain right-to-sue letters because of the DOJ's investigation and lawsuit.  (Amend. Compl., ¶ 8).  The defendants withdrew both of those grounds for dismissal in their October 24 motion to dismiss the Amended Complaint.  The grounds for dismissal raised in the September 9 motion and October 24 motion are otherwise the same.

to Dismiss the Complaint, in Part dated Oct. 24, 2016, ("Def. 10/24/16 Memo.") at 3).

Discussion

    A.   Legal Standard

    To survive a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter . . . to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)). The court's charge in ruling on a 12(b)(6) motion to dismiss "is merely to assess the legal feasibility of the complaint, not to assay the weight of the evidence which might be offered in support thereof." GVA Market Neutral Master Ltd. v. Veras Capital Partners Offshore Fund, Ltd., 580 F. Supp. 2d 321, 327 (S.D.N.Y. 2008) (quoting Eternity Global Master Fund Ltd. v. Morgan Guaranty Trust Co. of New York, 375 F.3d 168, 176 (2d Cir. 2004)). The court must construe the complaint in the light most favorable to the plaintiff, "taking its factual allegations to be true and drawing all reasonable inferences in the plaintiff's favor." Harris v. Mills, 572 F.3d 66, 71 (2d Cir. 2009).

    B.   Municipal Liability Under 42 U.S.C. § 1981

    When a defendant sues a municipality for discrimination under 42 U.S.C. § 1981, "the plaintiff is required to show that the challenged acts were performed pursuant to a municipal 'policy or

custom.'" <u>Patterson v. County of Oneida</u>, 375 F.3d 206, 226 (2d Cir. 2004); see also <u>Chin v. New York City Housing Authority</u>, 575 F. Supp. 2d 554, 561 (S.D.N.Y. 2008) ("A municipality can be liable for violating Section 1981 only if the injury at issue resulted from the execution of a racially discriminatory 'policy or custom.'" (footnote omitted)).  A "policy or custom" exists where a practice is "so widespread as to have the force of law, even though it has 'not received formal approval through the body's official decision-making channels.'" <u>Vaher v. Town of Orangetown</u>, 133 F. Supp. 3d 574, 594 (S.D.N.Y. 2015) (quoting <u>Monell v. Department of Social Services</u>, 436 U.S. 658, 691 (1978)).  "[A] single incident alleged in a complaint, especially if it involved only actors below the policy-making level, does not suffice to show a municipal policy." <u>DeCarlo v. Fry</u>, 141 F.3d 56, 61 (2d Cir. 1998) (quoting <u>Ricciuti v. New York City Transit Authority</u>, 941 F.2d 119, 123 (2d Cir. 1991)).  At the same time, "the acts and pronouncements of a single official may constitute policy for which the municipality is liable if that official is the 'final policymaker' in the area at issue." <u>Chin</u>, 575 F. Supp. 2d at 561; see also <u>Pembaur v. City of Cincinnati</u>, 475 U.S. 469, 480 (1986) ("[M]unicipal liability may be imposed for a single decision by municipal policymakers under appropriate circumstances.").

The plaintiffs argue that Ms. Zanca's conduct constitutes a municipal custom because it reflects "a widespread practice,

against all the African-American teache[r]s[] throughout PAIHS."
(Plaintiffs' Memorandum of Law in Opposition to Defendants' Motion
to Dismiss the Amended Complaint in Part ("Pl. Memo.") at 3).  This
argument is without merit.  The plaintiffs do not allege that "the
DOE had a policy or widespread and well-settled practice of
discriminating against employees."  Batista v. DeGennaro, No. 13
Civ. 1099, 2015 WL 1566733, at *3 (S.D.N.Y. March 31, 2015).
Rather, the plaintiffs' allegations are confined to the actions of
a single principal at one school.  Even if pervasive at that
school, the discriminatory practices of a single principal do not
constitute a policy or custom of the DOE.  See Dressler v. New
York City Department of Education, No. 10 Civ. 3769, 2012 WL
1038600, at *17 (S.D.N.Y. March 29, 2012) (principal's issuance of
unsatisfactory ratings is not a policy or custom where the
"[p]laintiff adduces no evidence of practices or policies at a
level higher than [the] principal who issued [the] ratings").  Nor
is a school principal a "final policymaker" with respect to teacher
evaluations and terminating employees.  See Batista, 2015 WL
1566733, at *3 ("[S]chool [p]rincipals . . . do not have the
authority to make employment decisions that are binding vis-à-vis
the DOE." (footnote omitted)); Fierro v. New York City Department
of Education, 994 F. Supp. 2d 581, 589 (S.D.N.Y. 2014) ("[W]ith
respect to termination of teachers' employment, principals do not
have final decisional authority; their decisions are subject to

appeal to the Chancellor and the DOE."); Dressler, 2012 WL 1038600, at *17 ("A principal's teacher evaluation deviating from the chancellor's regulations is subject to reversal; as such, a principal's evaluations are neither policy nor final."). Therefore, Ms. Zanca's conduct does not constitute a policy or custom of the DOE.

The plaintiffs also argue that the DOE can be held liable for failure to train Ms. Zanca. (Pl. Memo. at 6-7). "In limited circumstances, a local government's decision not to train certain employees about their legal duty to avoid violating citizens' rights may rise to the level of an official government policy . . . ." Connick v. Thompson, 563 U.S. 51, 61 (2011). To hold a defendant liable under the failure to train theory, a plaintiff must show that the defendant's failure to train "amount[s] to 'deliberate indifference to the rights of persons with whom the [untrained employees] come into contact.'" Id. (alteration in original) (quoting City of Canton v. Harris, 489 U.S. 378, 388 (1989)). Deliberate indifference is a "stringent standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of [her] action." Id. (quoting Board of County Commissioners of Bryan County v. Brown, 520 U.S. 397, 410 (1997)). The plaintiff must also "identify a specific deficiency in the city's training program and establish that the deficiency . . . 'actually caused' the constitutional deprivation." Amnesty

America v. Town of West Hartford, 361 F.3d 113, 130 (2d Cir. 2004) (quoting City of Canton, 489 U.S. at 391). To "ensure that a failure to train theory does not collapse into respondeat superior liability," the constitutional deprivation must "occur[] as a result of a municipal policy rather than as a result of isolated conduct by a single actor." Id.

The plaintiffs' failure to train claim is based solely on the conduct of Ms. Zanca -- a single actor. Moreover, the plaintiffs do not allege a causal nexus between a specific training program (or lack thereof) and the constitutional violations alleged in the Amended Complaint. Even if they had, they fail to allege that "city policymakers [were] on actual or constructive notice that a particular omission in their training program cause[d] [Ms. Zanca] to violate citizens' constitutional rights." Connick, 563 U.S. at 61. Though the plaintiffs allege that Mr. Mendez was aware of Ms. Zanca's conduct (Amend. Compl., ¶¶ 65-66, 72), he was not a municipal policymaker with respect to the conduct at issue. Flanagan v. New York City Department of Education, 13 Civ. 8456, 2015 WL 11142630, at *14 (S.D.N.Y. Aug. 21, 2015), report and recommendation adopted, 2016 WL 7156765 (S.D.N.Y. Dec. 7, 2016). Thus, the plaintiffs' failure to train claim lacks merit.[2] Absent

---

[2] To the extent that the plaintiffs also assert failure to supervise as a basis to impose municipal liability, that claim fails for the same reason. They do not allege that a city policymaker was on notice of Ms. Zanca's conduct such that a

a theory to support the imposition of municipal liability, their claim against the DOE under 42 U.S.C. § 1981 should be dismissed.

C.    Title VII Statute of Limitations

"As a precondition to filing an action in federal court under Title VII, a litigant must first have filed a timely charge of discrimination with the [EEOC]." Odom v. Doar, 497 F. App'x 88, 89 (2d Cir. 2012); see 42 U.S.C. § 2000e-5(e)(1). "In New York, the statute of limitations for filing a charge with the EEOC is 300 days." Odom, 497 F. App'x at 89; see also Tsai v. Rockefeller University, 137 F. Supp. 2d 276, 280 (S.D.N.Y. 2001). The defendants argue that the plaintiffs' Title VII claims are barred to the extent that they are based on conduct that occurred more than 300 days prior to the filing of their EEOC charges. (Def. 10/24/16 Memo. at 10). The plaintiffs counter that the "continuing violation doctrine" saves those claims. (Pl. Memo. at 7-9).

"Under Title VII's continuing violation doctrine, 'if a plaintiff has experienced a continuous practice and policy of discrimination, . . . the commencement of the statute of limitations period may be delayed until the last discriminatory act in furtherance of it.'" Washington v. County of Rockland, 373 F.3d 310, 317 (2d Cir. 2004) (alteration in original) (quoting

---

failure to properly supervise her amounted to deliberate indifference to the occurrence of known or obvious constitutional violations.

Fitzgerald v. Henderson, 251 F.3d 345, 349 (2d Cir. 2001)). The doctrine applies to claims "composed of a series of acts that collectively constitute one unlawful [] practice." Gonzalez v. Hasty, 802 F.3d 212, 220 (2d Cir. 2015) (alteration in original) (quoting Washington, 373 F.3d at 318). To trigger the continuing violation doctrine, the plaintiff "must allege both the existence of an ongoing policy of discrimination and some non-time-barred acts taken in furtherance of that policy." Harris v. City of New York, 186 F.3d 243, 250. (2d Cir. 1999). "The doctrine has generally been limited to situations where there are specific policies or mechanisms, such as discriminatory seniority lists or employment tests." Crosland v. City of New York, 140 F. Supp. 2d 300, 307 (S.D.N.Y 2001). Accordingly, "discrete discriminatory acts are not actionable if time barred, even when they are related to acts alleged in timely filed charges." National Railroad Passenger Corp. v. Morgan, 536 U.S. 101, 113 (2002).

The plaintiffs argue that the continuing violation doctrine applies to their claims because they alleged "an ongoing pattern, practice[,] and policy of racial discrimination." (Pl. Memo. at 8). Though all of Ms. Zanca's alleged conduct was related in that it was designed to target African-American teachers, the unsatisfactory ratings she gave to Ms. Hightower, her efforts to undermine Ms. James' theater program, and her instructing school safety officers not to allow the plaintiffs on school premises

14

were discrete acts of discrimination and retaliation.  See Valtchev v. City of New York, 400 F. App'x 586, 589 (2d Cir. 2010) ("[D]iscrete instances of [discriminatory] action, such as negative evaluations, [] do not trigger the continuing violation exception.").  The plaintiffs do not allege that those actions were carried out pursuant to a specific policy or mechanism beyond Ms. Zanca's individual racial animus.  Therefore, the continuing violation doctrine does not apply to the plaintiffs' Title VII claims.  Those claims should be barred to the extent that they are based on conduct that occurred more than 300 days prior to the filing of the plaintiffs' EEOC charges.

It is worth noting, however, that much of the discriminatory conduct alleged in the Amended Complaint falls within 300 days of the plaintiffs' EEOC filings.  Ms. Hightower was issued unsatisfactory lesson ratings through the spring of 2013, received an unsatisfactory rating for the school year in June 2013, and had her employment with the DOE terminated in July 2013 (Amend. Compl., ¶¶ 40, 42-43); Ms. Zanca's efforts to undermine Ms. James' theater program occurred in February and March of 2013.  (Amend. Compl., ¶¶ 53-57); and Ms. Zanca's exclusion of Ms. James and Ms. Hightower from the school's premises occurred in the summer of 2013.  (Amend. Compl., ¶ 63).  Accordingly, the statute of limitations does not bar the plaintiffs' Title VII claims entirely.

D.    NYSHRL and NYCHRL Claims Against the DOE and Mr. Mendez

The defendants' argue that the plaintiffs' NYSHRL and NYCHRL claims against the DOE and Mr. Mendez are barred by their failure to plead that they filed a notice of claim and by the one-year statute of limitations governing claims against school districts and their officers.   (Def. 10/24/16 Memo. at 11-13).   The plaintiffs concede that they did not file a notice of claim but argue that they were not required to do so.   (Pl. Memo. at 9-10). They rely on section 3813(2) of the New York Education Law, which requires a notice of claim to be filed in any lawsuit "founded upon tort" against a school district, its officers, or "any teacher or member of the supervisory or administrative staff or employee" of the district.   N.Y. Educ. Law § 3813(2).   Because employment discrimination claims under the NYSHRL and NYCHRL are not "founded upon tort," see Margerum v. City of Buffalo, 24 N.Y.3d 721, 730, 5 N.Y.S.3d 336, 340 (2015) (holding that the notice of claim requirement under sections 50-e of the New York General Municipal Law does not apply to employment discrimination claims under the NYSHRL because "[h]uman rights claims are not tort actions under section 50-e"), the plaintiffs argue that they were not required to file a notice of claim pursuant to section 3813(2).

That argument has merit with respect to the notice of claim requirement in section 3813(2).   However, the plaintiffs ignore section 3813(1) of the Education Law, which requires a notice of

claim to be filed to bring a lawsuit against a school district or
its officers for "any cause whatever . . . involving the rights or
interests of any district or any such school." N.Y. Educ. Law §
3813(1). Section 3813(1) is narrower than section 3813(2) in that
it only applies to claims against school districts and their
officers, but broader than section 3813(2) in that it is not
limited to claims founded upon tort. As a result, its notice of
claim requirement applies to employment discrimination claims
against school districts and their officers under the NYSHRL and
NYCHRL. See, e.g., Smith v. New York City Department of Education,
808 F. Supp. 2d 569, 578 (S.D.N.Y. 2012) ("Section 3813 of New
York's Education law requires the filing of a notice of claim prior
to the commencement of an action against the DOE or its officers.
. . . [T]he requirements apply to causes of action sounding in
discrimination . . . ."); Santiago v. Newburgh Enlarged City School
District, 434 F. Supp. 2d 193, 196 (S.D.N.Y. 2006)
("Section 3813(1) of the State Education Law makes the filing of
a notice of claim within three months after the accrual of a claim
an absolute condition precedent to the filing of a lawsuit . . . .
The notice of claim requirement applies to claims for
discrimination under the New York State Human Rights Law."). The
filing of a notice of claim must "appear by and as an allegation
in the complaint or necessary moving papers." N.Y. Educ. Law §
3813(1). The plaintiffs did not plead that they filed a notice of

17

claim in the Amended Complaint or their moving papers. Accordingly, their NYSHRL and NYCHRL claims against the DOE and Mr. Mendez should be dismissed.[3]

E.   NYSHRL and NYCHRL Claims Against Ms. Zanca

Claims under the NYSHRL and NYCHRL are generally governed by a three-year statute of limitations.  CPLR § 214(2); N.Y.C. Admin. Code § 8-502(d); Taylor v. City of New York, __ F. Supp. 3d __, __, 2016 WL 4768829, at *5 (S.D.N.Y. 2016).  The defendants contend that the plaintiffs' NYSHRL and NYCHRL claims against Ms. Zanca should be dismissed to the extent that they are based on conduct that occurred before June 22, 2013, three years before this action was commenced.  (Def. 10/24/16 Memo. at 13).  This argument is without merit.  Filings with the New York State Division of Human Rights ("NYSDHR") toll the statute of limitations under the NYSHRL and NYCHRL, Penman v. Pan American Airways, 69 N.Y.2d 989, 990,

---

[3] Because those claims should be dismissed based on the plaintiffs' failure to plead that they filed a notice of claim, the defendants' statute of limitations argument need not be addressed.  However, the issue was already resolved in Mr. Riccardo's lawsuit, which is consolidated with this action.  For the reasons discussed in Riccardo v. New York City Department of Education, No. 16 Civ. 4891, 2016 WL 7106048, at *6-8 (S.D.N.Y. Dec. 2, 2016), report and recommendation adopted sub nom. United States v. New York City Department of Education, Nos. 16 Civ. 4291, 16 Civ. 4891, 2017 WL 57854 (S.D.N.Y. Jan. 4 2017), the one-year statute of limitations on claims against the DOE and its officers is tolled during the pendency of an EEOC complaint.  Accordingly, if the plaintiffs had satisfied the notice of claim requirement, the statute of limitations would have been tolled during the pendency of their EEOC complaints.

517 N.Y.S.2d 719, 719 (1987), and a timely EEOC filing is deemed filed with the NYSDHR for tolling purposes, see Siddiqi v. New York City Health & Hospitals Corp., 572 F. Supp. 2d 353, 373 (S.D.N.Y. 2008); Martinez-Tolentino v. Buffalo State College, 277 A.D.2d 899, 899, 715 N.Y.S.2d 554, 555 (4th Dep't 2000). Accordingly, numerous district courts have held that the three-year statute of limitations under the NYSHRL and NYCHRL is tolled during the period in which a complaint is pending before the EEOC. See, e.g., Taylor, ___ F. Supp. 3d at ___, 2016 WL 4768829, at *5; Esposito v. Deutsche Bank AG, No. 07 Civ. 6722, 2008 WL 5233590, at *5 (S.D.N.Y. Dec. 16, 2008).   Therefore, the statute of limitations on the plaintiffs' NYSHRL and NYCHRL claims against Ms. Zanca was tolled from the date of their respective EEOC filings in 2013 through June 9, 2016, the date the Justice Department filed its lawsuit.   Since all of the discriminatory conduct alleged by the plaintiffs occurred in 2012 and 2013, the three-year statute of limitations does not bar their NYSHRL and NYCHRL claims against Ms. Zanca.

F.   Constructive Discharge

Ms. James alleges that she was constructively discharged from the DOE in violation of Title VII, the NYSHRL, and the NYCHRL because Ms. Zanca's conduct left her no choice but to leave PAIHS. (Amend. Compl., ¶¶ 75-76, 92, 98, 108; Pl. Memo. at 12-14).   The defendants contend that this claim should be dismissed because Ms.

James does not allege that she ever stopped working at the DOE. (Def. 10/24/16 Memo. at 14). "An employee is constructively discharged when [her] employer, rather than discharging [her] directly, intentionally creates a work atmosphere so intolerable that [s]he is forced to quit involuntarily." Terry v. Ashcroft, 336 F.3d 128, 151-52 (2d Cir. 2003); see also Shultz v. Congregation Shearith Israel of the City of New York, __ F. Supp. 3d __, __, 2016 WL 4367974, at *6 (S.D.N.Y. 2016). The Supreme Court recently explained that a constructive discharge claim consists of "two basic elements." Green v. Brennan, __ U.S. __, __, 136 S. Ct. 1769, 1777 (2016). First, a plaintiff must prove "that [s]he was discriminated against by [her] employer to the point where a reasonable person in [her] position would have felt compelled to resign." Id.; accord Terry, 336 F.3d at 152. Second, she "must [] show that [s]he actually resigned." Green, __ U.S. at __, 136 S. Ct. at 1777; cf. Brown v. New York State Department of Correctional Services, 583 F. Supp. 2d 404, 413 (W.D.N.Y. 2008) ("As the term 'constructive discharge' implies, a sine qua non of such a claim is that the plaintiff's employment with the defendant has ended.").

Here, the Amended Complaint indicates that Ms. James did not resign from the DOE in response to Ms. Zanca's conduct. Rather, she transferred to a job at Manhattan Lab, a different school within the DOE. (Amend. Compl., ¶ 76). The school was scheduled

to close two years after she transferred there.   (Amend. Compl., ¶ 76).   Though the Amended Complaint states that "she has not been working for the Defendants," presumably because of Manhattan Lab's closing, it also states that she "may still be on [the] DOE's payroll."   (Amend. Compl., ¶¶ 76-77).   Her current employment status with the DOE is therefore unclear.   Absent an allegation that Ms. James actually resigned from the DOE because of Ms. Zanca's conduct, the Amended Complaint does not state a claim for constructive discharge.   Accordingly, her constructive discharge claim should be dismissed.

Dismissal of the constructive discharge claim does not, however, bar Ms. James from bringing a claim under Title VII or the human rights laws based on her decision to transfer to Manhattan Lab.   Several district courts in this Circuit and several United States courts of appeals have applied the constructive discharge doctrine to situations where an employee voluntarily transfers to a different position with the same employer.   See, e.g., Sharp v. City of Houston, 164 F.3d 923, 934 (5th Cir. 1999) (reversing grant of summary judgment where "[t]he jury could have found that the transfer, albeit at [the plaintiff's] request, was a constructive demotion, the involuntary result of conditions so intolerable that a reasonable person would feel compelled to leave"); Claes v. Boyce Thompson Institute for Plant Research, 88 F. Supp. 3d 121, 126 (N.D.N.Y. 2015) ("The Second Circuit has not

21

explicitly recognized and applied the doctrine of constructive discharge to scenarios in which an employee accepts a transfer of employment.  However, various district courts in this circuit and several other circuit courts have persuasively explained the reasoning behind such application."); Sebold v. City of Middletown, No. 05 CV 1205, 2007 WL 2782527, at *13 (D. Conn. Sept. 21, 2007) ("A voluntary transfer can constitute an adverse employment action if it amounts to a constructive discharge." (footnote omitted)); De Chanval Pellier v. British Airways, PLC, No. 02 CV 4195, 2006 WL 132073, at *4 (E.D.N.Y. Jan. 17, 2006) (collecting cases from the Fifth, Seventh, and Eighth Circuits applying constructive discharge analysis to voluntary employment transfers).

Applying the constructive discharge doctrine to voluntary transfers is rooted in the principle that an involuntary transfer constitutes an adverse employment action if "the plaintiff 'show[s] that the transfer created a materially significant disadvantage' with respect to the terms and conditions of employment."[4] Williams v. R.H. Donnelly, Corp., 368 F.3d 123, 128 (2d Cir. 2004) (alteration in original) (quoting Galabya v. New

---

[4]   An "adverse employment action" is measured by the same standard under Title VII, the NYSHRL, and the NYCHRL.  Bermudez v. City of New York, 783 F. Supp. 2d 560, 576-77 (S.D.N.Y. 2011); Knight v. City of New York, 303 F. Supp. 2d 485, 495 (S.D.N.Y 2004).

York City Board of Education, 202 F.3d 636, 641 (2d Cir. 2000)). Just as a voluntary resignation becomes actionable as a constructive discharge when an employer creates working conditions so intolerable that a reasonable person would feel compelled to resign, a voluntary transfer to a materially inferior position becomes actionable as a constructive involuntary transfer[5] when an employer "create[s] conditions so difficult or unpleasant that a reasonable person in her shoes would have been compelled to request and accept the transfer." Claes, 88 F. Supp. 3d at 126; see also De Chanval Pellier, 2006 WL 132073, at *5. Accordingly, Ms. James may bring a constructive involuntary transfer claim under Title VII and the human rights laws if (1) she was discriminated against to the point that working conditions were so intolerable that a reasonable person in her shoes would feel compelled to transfer;

---

[5] Some of the courts that have applied the constructive discharge doctrine to voluntary transfers call the claim a "constructive demotion." See Fenney v. Dakota, Minnesota & Eastern Railroad Co., 327 F.3d 707, 717 (8th Cir. 2003); Sharp, 164 F.3d at 934; Claes, 88 F. Supp. 3d at 126. Other courts do not give the claim a name at all. See Sebold, 2007 WL 2782527, at *13; De Chanval Pellier, 2006 WL 132073, at *5. The term "constructive demotion" has been used by courts in this district for a different type of claim. See, e.g., Tse v. UBS Financial Services, Inc., 568 F. Supp. 2d 274, 290 (S.D.N.Y. 2008) ("When an employer imposes new conditions of employment and combines those conditions with a threat of termination for non-compliance, such a combination may give rise to a constructive demotion, thereby creating an adverse employment action."). Accordingly, I adopt the term "constructive involuntary transfer" to describe the application of the constructive discharge doctrine to voluntary employment transfers.

and (2) her transfer created a materially significant disadvantage in the terms and conditions of her employment.

Although establishing that working conditions are so intolerable that a reasonable person would feel compelled to leave is "a 'demanding' standard," Pryor v. Jaffe & Asher, LLP, 992 F. Supp. 2d 252, 262 (S.D.N.Y. 2014) (quoting Miller v. Praxair, Inc., 408 F. App'x 408, 410 (2d Cir. 2010)), the allegations here are extreme. Ms. Zanca engaged in repeated efforts to undermine Ms. James' theater program -- the program she was hired to run -- by withdrawing previously allocated funds on multiple occasions and disparaging Ms. James to the students' parents. (Amend. Compl., ¶¶ 53-54, 56-57). When Ms. James filed a complaint with the OEO, Ms. Zanca responded by ordering school safety officers not to allow her on school premises even though she was still employed at PAIHS. (Amend. Compl., ¶ 63). Moreover, Ms. Zanca's treatment of Ms. Hightower and Mr. Flanagan indicated that her treatment of Ms. James was racially motivated and designed to force her out of the school. Under these circumstances, a reasonable person in Ms. James' position might feel compelled to transfer away from PAIHS.

A "materially significant disadvantage" in working conditions includes "a decrease in wage or salary, a less distinguished title, a material loss of benefits, or other indices . . . unique to the particular situation." Williams, 368 F.3d at 128 (alteration in original) (quoting Galabya, 202 F.3d at 640). It "must be more

disruptive than a mere inconvenience or alteration of job responsibilities." Id. (quoting Galabya, 202 F.3d at 640). In this case, Ms. James' position at Manhattan Lab was temporary, ending when the school was closed, as scheduled, two years after her transfer. (Amend. Compl., ¶ 76). Her position at PAIHS, on the other hand, had no set end date. The transfer also led her to be marked as an "excess employee" when Manhattan Lab closed (Amend. Compl., ¶ 76), though the Amended Complaint does not explain the implications of this designation. Although Ms. James does not allege a decrease in salary, a reduction in pay is not required for a transfer to be an adverse employment action. De la Cruz v. New York City Human Resources Administration Department of Social Services, 82 F.3d 16, 21 (2d Cir. 1996) (transfer from job in "'elite' division" to "less prestigious unit with little opportunity for professional growth" but identical pay was adverse employment action for purposes of prima facie case); Leichter v. St. Vincent's Hospital and Medical Center of New York, No. 94 Civ. 7537, 2001 WL 1160748, at *9 (S.D.N.Y. Sept. 28, 2001) ("[A]dverse employment actions exist even where an employee has experienced no change in salary."). Therefore, Ms. James' transfer was more than a mere inconvenience or change in responsibilities. It put an expiration date on her position with the DOE where none existed before and left her with a possibly disadvantageous designation when that position ended. These allegations could constitute

25

"materially significant disadvantage" in the terms and conditions of employment. Accordingly, her constructive discharge claim should be dismissed without prejudice to replead a claim of constructive involuntary transfer.

Conclusion

For the reasons discussed above, the defendants' motion to dismiss the Amended Complaint, in part, should be granted in the following respects: (1) the plaintiffs' claim against the DOE under 42 U.S.C. § 1981 should be dismissed; (2) the plaintiffs' Title VII claims should be barred to the extent that they are based on conduct that occurred more than 300 days before they filed their EEOC charges; (3) the plaintiffs' NYSHRL and NYCHRL claims against the DOE and Mr. Mendez should be dismissed; and (4) Ms. James' constructive discharge claim should be dismissed without prejudice to replead a claim of constructive involuntary transfer. The defendants' motion should be denied in all other respects.

Pursuant to 28 U.S.C. § 636 (b)(1) and Rules 72, 6(a), and 6(d) of the Federal Rules of Civil Procedure, the parties shall have fourteen (14) days to file written objections to this Report and Recommendation. Such objection shall be filed with the Clerk of the Court, with extra copies delivered to the Chambers of the Honorable Lewis A. Kaplan, Room 2240, 500 Pearl Street, New York, New York 10007, and to the Chambers of the undersigned, Room 1960,

500 Pearl Street, New York, New York 10007.  Failure to file timely objections will preclude appellate review.

Respectfully submitted,

JAMES C. FRANCIS IV
UNITED STATES MAGISTRATE JUDGE

Dated: New York, New York
       January 31, 2017

Copies transmitted this date to:

Bryan S. Arce, Esq.
Erica L. Shnayder, Esq.
Arce Law Group PC
30 Broad St., 35th Floor
New York, NY 10009

Danielle M. Dandrige, Esq.
Jessica Wisniewski, Esq.
New York City Law Department
100 Church Street
New York, NY 10007