UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------x
UNITED STATES OF AMERICA,

                Plaintiff,

     -against-                             16-cv-4291 (LAK)

NEW YORK CITY DEPARTMENT OF EDUCATION,

                Defendants.
------------------------------------------x
LISA-ERIKA JAMES,

                Plaintiff,

     -against-                             16-cv-4844 (LAK)

NEW YORK CITY DEPARTMENT OF EDUCATION et al.,

                Defendants.
------------------------------------------x

## ORDER

        The defendants in these actions previously moved for summary judgment. In so doing, they submitted a statement under Rule 56.1 of the Local Civil Rules of this Court containing 341 paragraphs of proposed material facts that they asserted were not genuinely in dispute [16-cv-4891, DI-72]. The plaintiffs filed a joint response to the defendants' statement in which they agreed that a substantial number of these facts were not in dispute, either by asserting that they were undisputed or by failing to dispute them in substance [16-cv-4891, DI-79].

        In view of the parties' inability to reach any meaningful stipulation of facts to shorten the trial and render the facts more readily understandable to the jury, the Court prepared a draft statement of undisputed acts (the "Draft Statement") from the parties' Rule 56.1 statements. It informed the parties that the Court was prepared to enter a Rule 56(g) order determining that the propositions contained in the Draft Statement (or any amendment thereof in light of subsequent comments by the parties) that in fact were undisputed at the time of plaintiffs' response to defendants' Rule 56.1 statement were not genuinely in dispute and would be binding on the jury.

Subsequently, the parties proposed jointly that the Court omit a majority of the statements in the Draft Statement and present to the jury a shorter set of facts (the "Proposed Second Draft Statement") [16-cv-4891, DI-166]. All parties agreed to the facts contained in the Proposed Second Draft Statement, except as two statements, to which plaintiffs objected, contained in paragraphs 69 and 70.[1] As plaintiffs previously asserted that these statements were not genuinely in dispute, their objections are overruled.[2]

The Court adopts the Proposed Second Draft Statement as the Undisputed Facts attached to this order.

SO ORDERED.

Dated: January 30, 2020

                                          Lewis A. Kaplan
                                          United States District Judge

---

[1] The parties requested jointly that the Court omit two paragraphs contained in the Proposed Second Draft Statement and modify several others. The Court grants these requests. Accordingly, the statements contained in paragraphs 69 and 70 of the Proposed Second Draft Statement appear in paragraphs 67 and 68 of the statement that the Court adopts.

[2] *See* Plaintiffs' Rule 56.1 Response [16-cv-4291, DI-79] ¶ 209 (asserting that the statement found in paragraph 69 of the Proposed Second Draft Statement is undisputed); *id.* ¶ 210 (same for paragraph 70 of the Proposed Second Draft Statement).

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------x
UNITED STATES OF AMERICA,

        Plaintiff,

-against-                                                                            16-cv-4291 (LAK)

NEW YORK CITY DEPARTMENT OF EDUCATION,

        Defendant.
------------------------------------------------------------x
LISA-ERIKA JAMES,

        Plaintiffs,

-against-                                                                      16-cv-4844 (LAK)

NEW YORK CITY DEPARTMENT OF EDUCATION et al.,

        Defendants.
------------------------------------------------------------x

## UNDISPUTED FACTS

LEWIS A. KAPLAN, *District Judge*.

        The facts set forth below are undisputed. The jury is obliged to accept them as true for purposes of this action.

        Certain of the facts stated below are couched in the present tense. For example, paragraph 20 states that "Formal and informal observations are rated either Unsatisfactory or Satisfactory." In considering facts so stated, it has been determined that those facts were true at all times relevant to these actions up to and including late 2013. Any question or concern as to whether any such fact remained true after that date or remains true now is immaterial and should not be considered by the jury.

## I. Pan American International High School at Elmhurst

1. Pan American International High School at Elmhurst ("Pan American"), a New York City Department of Education ("DOE") high school is part of the International Network, which is a network of fourteen schools with a specific English as a Second Language ("ESL") model. Ninety-nine percent of the student population are native Spanish speakers. Pan American was also part of the Children's First Network ("CFN") 106. Plaintiffs' Response and Counter-Statement of Material Facts Under Local Civil Rule 56.1(b) (hereinafter "Rule 56.1 Response") ¶ 1. *See also* Exs. I at 35, 77; P at 18; D at 81; L at 23; S-V.

2. CFN 106 was a support group for 25 schools, including Pan American. Rule 56.1 Response ¶ 2. *See also* Exs. D at 36; L at 15.

3. During the 2010-11 and 2011-12 academic years, the principal Pan American of was Marcella Barros. Rule 56.1 Response ¶ 5.

## II. Pan American's Administrators

### (a) Defendant Minerva Zanca ("Principal Zanca")

1. Defendant Minerva Zanca was appointed as principal of Pan American, in an interim acting basis, at the start of the 2012-13 school year. Rule 56.1 Response ¶ 11. *See also* Exs A at 62; F at 36-37; I at 60-65; W.

2. On April 4, 2013, following a C-30 process, Ms. Zanca was appointed as principal of Pan American. Rule 56.1 Response ¶ 12. *See also* Exs. I at 60-65, 90-93; W; X.

3. Prior to becoming principal of Pan American, Principal Zanca had served as an assistant principal ("AP") for two years, a guidance counselor and teacher for a combined total of ten years, and a Spanish language teacher for twelve years for approximately 24 years of DOE service prior to becoming Principal. Rule 56.1 Response ¶ 13. *See also* Ex. F at 11.

4. Ms. Zanca was the principal for Pan American for the academic years 2012-13, 2013-14 and 2014-15. She served as acting principal until April 2013. Rule 56.1 Response ¶ 16. *See also* Exs. E at 46-47; G at 20.

### (a) **Defendant Juan Mendez ("Superintendent Mendez")**

1. Superintendent Mendez began working for the DOE in August 1985. Rule 56.1 Response ¶ 18. *See also* Exs. H at 6-8: I at 19.

2. Since 2015, Superintendent Mendez has served as the superintendent of schools for the New Visions Schools in Queens and Bronx counties, and District 28, of the DOE. Rule 56.1 Response ¶ 19. *See also* Exs. H at 5; I at 19-20.

3. Between 2011 and 2014, Superintendent Mendez was the Queens High School Superintendent, during which time he oversaw 89 high and secondary schools in Queens County. Rule 56.1 Response ¶ 20. *See also* Ex. I at 20-21.

4. As Queens High School superintendent, Superintendent Mendez directly supervised the principals of the 89 schools under his purview and functioned as their rating officer. He also attended district leadership and community meetings. He conducted quality reviews, which are qualitative evaluations of the schools he supervised. Rule 56.1 Response ¶ 21. *See also* Ex. I at 21-22.

5. As part of his responsibilities as superintendent, Superintendent Mendez determined teachers' tenure, probation extensions, and discontinuances. Rule 56.1 Response ¶ 22. *See also* Ex. I at 22-23.

6. In his role as superintendent, Superintendent Mendez did not conduct investigations into employee complaints of discrimination, but he authorized the discipline of

employees as a result of findings by the DOE's Office of Equal Opportunity ("OEO"). Rule 56.1 Response ¶ 23. *See also* Ex. I at 26-31.

### III. The 2012-2013 Teacher Rating Process

7. From 2010 to 2013, one evaluation system existed for rating teachers, whether those teachers had received tenure, or had not yet completed their probationary period. The evaluation procedure is set forth in Article 8 of the collective bargaining agreement for teachers, which specifically references "Teaching in the 21st Century" and also can be found in the Rating Pedagogical Staff Members manual. Rule 56.1 Response ¶ 26. *See also* Exs. J at 21-22; Y.

8. During the 2010-13 academic years, probationary teachers were subject to a three-year probationary period. The three year probationary period could be extended at the end of the third year based on the recommendation of the principal, who functioned as the teacher's rating officer. The superintendent then reviewed the recommendation and issued the final decision. Extensions of probation are generally for one-year periods. Rule 56.1 Response ¶ 27. *See also* E at 44; E at 44; J at 40-42; Y at USA 3039.

9. There is no limitation on how many extensions of probation can be granted. Rule 56.1 Response ¶ 28. *See also* Ex. J at 42.

10. Formal observations could be conducted by principals, assistant principals, or a combination of these administrators. Rule 56.1 Response ¶ 32. *See also* Ex. J at 50.

11. Formal observations are preceded and followed by a conference with the evaluating administrator(s). The pre-observation conference is for the purpose of discussing the lesson plan and answering any question the teacher may have. The post observation conference

is held in order to provide the teacher with feedback about the observed lesson, answer any questions, and provide strategy for future lessons. The observation report must be memorialized within three months of the observation. Rule 56.1 Response ¶ 34. *See also* Exs. G at 45-46; at 25; J at 48, 50-52; Z.

12. Formal and informal observations are rated either Unsatisfactory or Satisfactory. Rule 56.1 Response ¶ 36. *See also* Exs. G at 47; J at 54; Y at USA003032.

13. The purpose of the observations is to allow the rating officer to determine the teacher's strengths and weaknesses. They are also used as a tool to observe how a teacher responds to feedback. Rule 56.1 Response ¶ 37. *See also* Exs. E at 31-32; I at 100-102.

14. Logs of support are a record of support provided to the teacher including professional development, team meeting, feedback from mini, informal and formal observations, and any outside professional development received. Logs of support are implemented when there are signs that a teacher is struggling, resistant to guidance and/or unwilling to improve. Rule 56.1 Response ¶ 38. *See also* Exs. E at 155; G at 58-59.

15. At the end of the academic year, all teachers receive an annual rating. During the 2012-2013 academic year, teachers could receive either a Satisfactory or Unsatisfactory rating.

16. Annual ratings are based on the teacher's observation ratings, disciplinary letters, logs of support, goals, and/or attendance. The DOE does not require a principal to weigh any one component more than another one. Further, the DOE does not set any specific number of unsatisfactory observations that will lead to an unsatisfactory annual performance rating. Rule 56.1 Response ¶ 40. *See also* Exs. G at 33, 56-57; I at 211-212; J at 54-56; Y at USA 003032.

17. An unsatisfactory annual performance rating can lead to a teacher's discontinuance. Upon discontinuance, a teacher's license could be revoked which would not allow the teacher to teach anywhere in the DOE. A teacher could also be discontinued without a revocation of license, which would allow the teacher to work in a different district from which the teacher had been discontinued. Rule 56.1 Response ¶ 41. *See also* Ex. J at 57, 64-65; Y at USA 003036.

18. Annual ratings of teachers are prepared by the principal: a superintendent does not rate the teacher. The superintendent, however, makes the decision whether to grant a teacher tenure. Rule 56.1 Response ¶ 42. *See also* Ex. J at 70-73.

19. If the superintendent decides to discontinue a teacher, a letter is sent to the teacher with 30 days' notice. The teacher then has an opportunity to provide information to dispute the discontinuance. Rule 56.1 Response ¶ 43. *See also* Exs. J at 74, 75; M at 83-84.

20. Any teacher can grieve, or appeal, an unsatisfactory annual performance rating or discontinuance. Rule 56.1 Response ¶ 44. *See also* Ex. J at 211.

21. Superintendents and principals have some discretion to change an employee's annual performance rating. The annual performance rating can also be changed as a result of an appeal. Rule 56.1 Response ¶ 45. *See also* Ex. J at 36, 39.

22. Assistant principals also are subject to an evaluation process and annual reviews. At the beginning of the year, the assistant principal establishes goals and objectives with his or her supervisor, which are subsequently memorialized on a form. Then at the end of the year, there is an evaluation of the year-long performance of the assistant principal measured against the goals and objectives. Rule 56.1 Response ¶ 46. *See also* Ex. J. at 107-108.

23. Assistant principals also are subject to a probationary period, which is five years long. Like teachers, the probationary period for an assistant principal can be similarly extended. Rule 56.1 Response ¶ 47. *See also* Ex. J. at 109.

24. Also similar to teachers, during the 2012-2013 academic year, assistant principals received annual ratings of either Satisfactory or Unsatisfactory. Rule 56.1 Response ¶ 48. *See also* Ex. J at 109-110.

25. As with teachers, the principal makes the recommendation as to whether an assistant principal receives tenure, an extension of probation, or discontinuance. The final determination with respect to an assistant principal's employment status is made by the superintendent. Rule 56.1 Response ¶ 49. *See also* Ex. J at 111-112.

### IV. John Flanagan ("Mr. Flanagan")

26. Mr. Flanagan commenced his employment as a teacher with the DOE in 2008. Rule 56.1 Response ¶ 52. *See also* Ex. A. at 12.

27. Mr. Flanagan was subject to a three year probationary period. This period of probation was extended twice so that his probationary period was scheduled to end in the fall of 2013, which was his fifth year of probationary service. Rule 56.1 Response ¶ 53. *See also* Ex. A at 41-44, 54:11-21, 60-62.

28. Mr. Flanagan was assigned to Pan American to teach native language arts, Spanish. Rule 56.1 Response ¶ 54. *See also* Ex. A 13, 15:3-20.

29. At the end of the 2011-12 academic year, Mr. Flanagan was rated "satisfactory" on his year-end evaluation by Principal Barros. Rule 56.1 Response ¶ 55.

30. Superintendent Mendez extended Mr. Flanagan's probation at the end of the 2011-2012 school year. Rule 56.1 Response ¶ 56.

31. Principal Zanca conducted informal classroom visits of Mr. Flanagan on September 7, 12, and 27, 2012. Rule 56.1 Response ¶ 58. *See also* Ex. BB.

32. On November 8, 2012, Principal Zanca and Assistant Principal Riccardo conducted a joint formal observation of Mr. Flanagan for which he received an unsatisfactory rating. Rule 56.1 Response ¶ 59. *See also* Ex. CC.

33. On November 19, 2012, Principal Zanca and Assistant Principal Riccardo conducted a joint informal observation of Mr. Flanagan. This observation was also rated unsatisfactory. Rule 56.1 Response ¶ 60. *See also* Ex. DD.

34. On December 17, 2012, Principal Zanca and Assistant Principal Riccardo conducted a joint formal observation of Mr. Flanagan, for which he received a "satisfactory" rating. Rule 56.1 Response ¶ 62. *See also* Ex. EE.

35. On January 7, 2013, Principal Zanca and Assistant Principal Riccardo conducted a joint informal observation of Mr. Flanagan for which he received an unsatisfactory rating. Rule 56.1 Response ¶ 63. *See also* Ex. G at 318; FF.

36. On February 14, 2013, Principal Zanca and Assistant Principal Riccardo conducted another joint informal observation of Mr. Flanagan, which was followed by a post-observation conference and for which Mr. Flanagan received another unsatisfactory rating. Rule 56.1 Response ¶ 65. *See also* Ex. GG.

37. On May 8, 2013, Principal Zanca and Eduardo Medrano, an Assistant Principal of Newtown High School ("Assistant Principal Medrano"), conducted a joint formal observation of Mr. Flanagan. Rule 56.1 Response ¶ 66. *See also* G at 110-112; HH.

38. Mr. Flanagan was issued an unsatisfactory rating for this lesson. Rule 56.1 Response ¶ 70. *See also* Ex. HH.

39. For the 2012-13 school year, Mr. Flanagan received an unsatisfactory rating from Principal Zanca on his end-of-year Annual Professional Performance Review ("APPR") and Principal Zanca recommended the discontinuance of his employment at Pan American. Rule 56.1 Response ¶ 78. *See also* Exs. G at 102-103; H at 29-30, KK.

### V. Heather Hightower ("Ms. Hightower")

40. Ms. Hightower began working for the DOE in 2009 as a paraprofessional. Rule 56.1 Response ¶ 115. *See also* Ex. B at 12-13.

41. While working at DOE, Ms. Hightower was a member of the union United Federation of Teachers. Rule 56.1 Response ¶ 116. *See also* Ex. B at 73.

42. At the start of the 2010-11 academic year, Ms. Hightower began working at Pan American as a 9th and 10th grade science teacher with an ESL teaching license for grades K-12 from New York State. Rule 56.1 Response ¶ 117. *See also* Ex. B at 19-21.

43. Ms. Hightower did not have any other teaching licenses. Rule 56.1 Response ¶ 118. *See also* Ex. B at 20.

44. When Ms. Hightower began working at Pan American she was a probationary teacher. She did not become eligible for tenure until the end of the 2012-13 academic year. Rule 56.1 Response ¶ 119. *See also* Ex. B at 21, 32.

45. Ms. Hightower continued to work at Pan American as a Science teacher during the 2011-12 academic year. Rule 56.1 Response ¶ 120. *See also* Ex. B at 33.

46. During that school year, she received both informal and formal observations from the Principal Barros and Assistant Principal Riccardo. Rule 56.1 Response ¶ 121. *See also* Ex. B at 34, 36-37.

47. Ms. Hightower continued to work at Pan American during the 2012-13 academic year, when Minerva Zanca became the principal of Pan American. Rule 56.1 Response ¶ 122. *See also* Ex. B at 64, 66.

48. For her formal observations, Ms. Hightower would have pre- and post-observation conferences with Principal Zanca and/or Assistant Principal Riccardo and would receive a written report regarding the observation. Rule 56.1 Response ¶ 125. *See also* Exs. B at 37, 71-72, 94; RR-TT; VV-XX.

49. On September 14, 2012, Ms. Hightower was informally observed by Principal Zanca and Assistant Principal Riccardo. Rule 56.1 Response ¶ 131. *See also* Exs. E at 110-112, 114-115; PP; RR at USA002422.

50. On November 28, 2012, Ms. Hightower received an unsatisfactory formal observation from Principal Zanca and Assistant Principal Riccardo. Rule 56.1 Response ¶ 132. *See also* Exs. B at 122-129; SS.

51. On December 20, 2012, Ms. Hightower received an unsatisfactory formal observation from Principal Zanca and Assistant Principal Riccardo. Rule 56.1 Response ¶ 135. *See also* Exs. B, TT.

52. In January 2013, Ms. Hightower received an unsatisfactory formal observation from Principal Zanca and Assistant Principal Riccardo. Rule 56.1 Response ¶ 142. *See also* Exs. B at 140-145; WW.

53. In April 2013, Assistant Principal Riccardo conducted Ms. Hightower's fourth formal observation. Rule 56.1 Response ¶ 146. *See also* Ex. B at 147-50; XX.

54. In June 2013, Principal Zanca conducted another informal observation of Ms. Hightower's class and gave her an unsatisfactory rating. Rule 56.1 Response ¶ 149. *See also* Exs. G at 87-88; WW.

55. Ms. Hightower received an Unsatisfactory annual performance rating on June 13, 2013. Principal Zanca also recommended that her probationary service be discontinued. Rule 56.1 Response ¶ 154. *See also* Exs. B at 157-160; YY.

### VI. Plaintiff Lisa-Erika James ("Ms. James")

56. Ms. James began working for the DOE in 2003, and she began teaching at Pan American in 2011 at its theater teacher. She continues to be employed by the DOE. Rule 56.1 Response ¶ 167. *See also* Exs. C at 16-17, 67; CCC.

57. Ms. James is a tenured teacher. Rule 56.1 Response ¶ 168. *See also* Ex. DDD.

58. "Per session" is overtime paid to teachers who run or oversee different after-school or Saturday programs. Per session is announced in postings prepared by the assistant principals. The postings note the set amount of hours available for the positions. Teachers have to submit applications for the positions and the approved applicant runs the program for the set amount of hours. Rule 56.1 Response ¶ 192. *See also* Ex. G at 175.

59. On April 3, 2013, Principal Zanca met with Assistant Principal Riccardo and Ms. James to discuss Pan American's after-school theater program. Rule 56.1 Response ¶ 194. *See also* Exs. C at 82:13–15; PPP.

60. On June 26, 2013, an investigator from the DOE's Office of Special Investigations ("OSI") interviewed Ms. James to allegations included in an OSI complaint that Principal Zanca had lodged against Assistant Principal Riccardo. Rule 56.1 Response ¶ 209. *See also* Ex. UUU.

61. The OSI investigator, Jared Feirstein, interviewed Ms. James as to possible employee misconduct by Assistant Principal Riccardo. Rule 56.1 Response ¶ 210. *See also* Exs. C at 67; L at 235; O at 91-93, 95-96; James at 67; VVV.

62. In September 2013, Ms. James transferred to the Manhattan Theater Lab High School ("Manhattan Theater") where she was employed as a theater teacher. Rule 56.1 Response ¶ 213. *See also* Ex. C at 121:17–24.

63. After her departure from Pan American, Ms. James was replaced by Helio Sepulveda as Pan American's theater teacher for academic year 2013-14. Rule 56.1 Response ¶ 218. *See also* Ex. G at 203.

64. The per-session available for the after-school theatre program in 2013-14 was 150 hours per semester. Rule 56.1 Response ¶ 219. *See also* Ex. C at 204.

## VII. Anthony Riccardo ("Assistant Principal Riccardo")

65. In 2006, Mr. Riccardo began working for the DOE as a middle-school teacher at I.S. 93 as part of the New York City Teaching Fellows program. Rule 56.1 Response ¶ 228. *See also* Exs. D at 5-6; E 16-17.

66. In 2008, after two years at I.S. 93, Mr. Riccardo transferred to Pan American where he taught high-school biology. *See also* Exs. D at 6; E at 17:-18. [Rule 56.1 Response ¶ 229.]

67. At that time, Marcella Barros was the principal of Pan American. Rule 56.1 Response ¶ 230. *See also* Exs. D at 6; E 17:22–24.

68. Some time prior to the start of the 2011 school year, Principal Barros promoted Mr. Riccardo to Assistant Principal of Organization at Pan American. Rule 56.1 Response ¶ 231. *See also* Exs. D at 607; E at 18:11–12, 21:10–1; ZZZ.

69. As an assistant principal, Mr. Riccardo was subject to a five-year probationary period. Rule 56.1 Response ¶ 232. *See also* Exs. D at 18; Et 19:9–14.

70. When Principal Zanca became Pan American's principal, Juan Mendez was the superintendent. Rule 56.1 Response ¶ 237. *See also* Ex. E at 34-35.

## VIII. OEO & EEOC Activity

71. Formal investigations of discrimination are conducted by the DOE's Office of Equal Opportunity ("OEO") and Office of Special Investigations ("OSI"). Rule 56.1 Response ¶ 327. *See also* Ex. I at 223-24, 227-29.

72. Mr. Flanagan filed a race discrimination complaint with the OEO on June 3, 2013. Rule 56.1 Response ¶ 328. *See also* Ex. OO.

73. Ms. Hightower filed her complaint of race and ethnicity discrimination with the OEO on June 24, 2013. Rule 56.1 Response ¶ 329. *See also* Ex. RRRR.

74. Ms. James also filed her complaint of race and ethnicity discrimination with the OEO on June 24, 2013. Rule 56.1 Response ¶ 330. *See also* Ex. SSSS.

75. On July 9, 2013, upon learning that Mr. Flanagan, Ms. Hightower, and Ms. James were considering filing external complaints, they were advised, in the presence of their union representation, that an external filing would result in the administrative closure of their OEO reports. Rule 56.1 Response ¶ 331. *See also* Ex. TTTT.

76. On July 23, 2013, on the basis of an interview with Assistant Principal Riccardo, the OEO initiated a complaint on his behalf regarding his allegations of discrimination regarding other employees. Rule 56.1 Response ¶ 333. *See also* Ex. UUUU.

77. On August 13, 2013, the OEO administratively closed its investigation into the discrimination complaints filed by Mr. Flanagan, Ms. Hightower, and Ms. James. Rule 56.1 Response ¶ 334. *See also* Ex. Q at 12-15, 97-99; VVVV.

78. The OEO administratively closed its investigations into Anthony Riccardo's complaint of discrimination. Rule 56.1 Response ¶ 335. *See also* Ex. Q at 12-15, 87.

79. Ms. Hightower filed a charge of race discrimination with the EEOC. Rule 56.1 Response ¶ 338. *See also* Ex. WWWW.

80. Assistant Principal Riccardo filed a charge of race discrimination with the EEOC. Rule 56.1 Response ¶ 339. *See also* Ex. WWWW.

81. Ms. James filed a charge of race discrimination with the EEOC. Rule 56.1 Response ¶ 340. *See also* Ex. WWWW.

82. Mr. Flanagan filed a charge of race discrimination with the EEOC. Rule 56.1 Response ¶ 341. *See also* Ex. WWWW.

SO ORDERED.

Dated: January ___, 2020

_____
Lewis A. Kaplan
United States District Judge